IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>José Alberto Berroa-Torres<br><br>Defendant. | **Criminal No. 25-455 (GMM)** |

**OPINION AND ORDER**

Before the Court is Defendant José Alberto Berroa-Torres's ("Mr. Berroa") *Motion for De Novo Bail Hearing under 18 U.S.C. § 3145(b)* ("*De Novo Motion*"). (Docket No. 18). In addressing the pending motion, this Court is guided by the principle that, regardless of a person's immigration status, "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Accordingly, the Court finds that there are conditions of release that can be fashioned to reasonably assure the safety of the community and the appearance of Mr. Berroa. Therefore, for the following reasons, the Court **GRANTS** the *De Novo Motion*.

I.    PROCEDURAL BACKGROUND

On October 17, 2025, a *Complaint* was filed against Mr. Berroa. (Docket No. 1). This occurred after the Puerto Rico Police conducted a search at his home allegedly in pursuit of an individual named "Cesar," whom they were surveilling for purported drug trafficking. *See* (Docket No. 18 at 7). On October 30, 2025, the Grand Jury charged Mr. Berroa in a three-count *Indictment*: first, for being a prohibited person as a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); second, for being a prohibited person as a non-citizen in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(8); and third, for illegal re-entry of a removed non-citizen after an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). *See* (Docket No. 8).

On October 31, 2025, the U.S. Probation Office filed Mr. Berroa's *Pretrial Services Report* ("PSR"). (Docket No. 11). It recommended that Mr. Berroa be detained pending trial. *See* (id. at 5). In the PSR, the U.S. Probation Office characterized Mr. Berroa as a flight risk and a danger to the community for several reasons, the lack of familial and community ties. *See* (id.). Furthermore, the U.S. Probation Office advised that "[t]here is no condition or combination of conditions that will reasonably assure the

appearance of the defendant as required and the safety of the community." (Id.).

On November 3, 2025, Magistrate Judge Marshal D. Morgan ("Magistrate Judge Morgan") issued an *Order of Detention Pending Trial*. (Docket No. 17). Magistrate Judge Morgan adopted the findings and recommendations of the PSR, and ordered that Mr. Berroa remain detained. (Id.).

On November 21, 2025, Mr. Berroa filed the instant *De Novo Motion*. (Docket No. 18). He argues that the "three charges carry a presumption in favor of release and the government failed to show why pretrial detention is warranted." (Id. at 5). Mr. Berroa contends that he "has no history of failing to appear in court and that he fully cooperated with law enforcement at the time of his arrest." (Id.). Also, Mr. Berroa asserts that his "personal history and characteristics further weigh in favor of his release" because he is the father of five U.S. citizen children and shares a seventeen-month-old son with his long-term partner, Ms. Lynette Espinosa ("Ms. Espinosa"), who herself owns a home and business in Florida. (Id. at 1, 5-7). Contrary to any concerns that he would fail to appear at court hearings, Mr. Berroa states that he has already attended his bail hearing, and that Ms. Espinosa, their son, his brother-in-law, and cousin were present. (Id. at 3). Furthermore, Mr. Berroa alleges that there is no evidence on the

record that he poses a danger to the community, as the charged offenses are not violent in nature and there are no allegations that he has acted violently or aggressively in relation to the pending charges. (Id. at 7). Indeed, Mr. Berroa asserts that "there was no allegation that he is "Cesar" - the individual the [Puerto Rico Police] were allegedly surveilling" and that "there were no drugs found in his home". (Id.).

In addition, Mr. Berroa posits that "although [he] has two prior convictions, they are both remote. The first conviction, a nonviolent drug offense, was over sixteen years ago and his second conviction, an illegal reentry, occurred in 2018." (Id. at 9). Lastly, he argues that he "is a hardworking immigrant parent of U.S. citizen children who has incentive to comply with the court's conditions of release." (Id.). Thus, Mr. Berroa argues that there are conditions of release that can reasonably ensure his appearance in court and the community's safety. (Id. at 13). Accordingly, he proposes the following arrangement to be released on bail: "that he (1) execute a $10,000 unsecured bond; (2) reside with his partner Ms. Espinosa (who has already agreed to be his third-party custodian) at their address of record in Rio Piedras; and (3) impose electronic monitoring with a GPS-enabled device." (Id. at 14).

On December 3, 2025, the United States of America ("Government") opposed the *De Novo Motion* by filing *The United States Opposition to Defendant's Motion for De Novo Bail Hearing*. (Docket No. 21). The Government argues that Mr. Berroa's "previous terms of imprisonment, terms of supervised release, removals and deportations have not deterred him from reentering and remaining without legal authorization in the United States while at the same time possessing multiple firearms, extended capacity magazines and ammunitions (sic.) as a prohibited person." (Id. at 2). According to the Government, Mr. Berroa's conduct reflects "disrespect for the law and poor judgement about the safety of others" and that his "foreign ties and lack of legal status further make him a risk of flight as well." (Id.). Furthermore, the Government contends that the evidence in this case strongly weighs in favor of pretrial confinement since Mr. Berroa "voluntarily admitted to [Puerto Rico Police] agents that the contraband inside the residence belong[ed] to him and provided [a] written statement later admitting the illegal possession of the firearms, magazines and ammunition" and admitted to having illegally re-entered the United States. (Id. at 2-3).

The Court held a de novo bail hearing on December 9, 2025. (Docket No. 26). At the hearing, the Government proceeded by proffer. The Government argued against conditions of release based

on Mr. Berroa's criminal history and legal status. The Government further contended that Mr. Berroa had not offered any new evidence beyond that already considered by Magistrate Judge Morgan and, therefore, requested that he remain detained pending trial. Mr. Berroa also proceeded by way of proffer. He argued that the Government had failed to demonstrate that he poses a risk of flight or a danger to the community, and that conditions of release can be fashioned to both secure his appearance in Court and reasonably assure the safety of the community. At the conclusion of the de novo hearing, the Court took the matter under advisement and maintained the pretrial detention status quo to review the record in more detail. The Court further ordered the Probation Officer to verify and obtain more information regarding Mr. Berroa's residential history and Ms. Espinosa's availability and suitability as a possible third-party custodian. (Docket No. 24).

On December 10, 2025, the Probation Officer filed a *Motion in Compliance with Court Order* and informed the Court that "Ms. Espinosa may not be a reliable partner to serve as a third-party custodian." (Docket No. 25 at 2). The Probation Officer requested the Court order Mr. Berroa to present a viable third-party custodian. (Id. at 3).

Accordingly, after the Court's order, on December 11, 2025, Mr. Berroa filed an *Informative Motion* and proposed Ms. Espinosa's

uncle, José Pérez ("Mr. Pérez") as a third-party custodian. (Docket Nos. 27, 28). Thereafter, the Court – again - ordered the Probation Officer to verify the proposed third-party custodian's suitability. (Docket No. 29). The Probation Officer complied on December 15, 2025, and informed the Court that Mr. Pérez is a suitable third-party custodian, yet reiterated the recommendation included in the PSR, regarding detention. (Docket No. 30).

## II.  LEGAL STANDARD

A.  Standard of Review of a Detention Order Pursuant to the Bail Reform Act

A district court reviews "a magistrate judge's order of detention or release under a *de novo* standard and 'need not defer to the magistrate judge's findings or give specific reasons for rejecting them.'" United States v. Ramos-Meléndez, No. 24-CR-77-RAM, 2024 WL 1430783, at *3 (D.P.R. April 3, 2024) (*quoting* United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014)); *see also* United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990); United States v. Rodríguez-Romero, 18 F. Supp. 3d 116, 118 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Cidraz-Santiago, 18 F.Supp.3d at 126.

In performing its duty, the district court must consider the statutory factors set forth by the Bail Reform Act of 1984, 18

U.S.C. §§ 3141-3156 ("Bail Reform Act"), at Section 3142. *See* Rodriguez-Romero, 18 F. Supp. 3d at 118; United States v. Torres-Rosario, 600 F. Supp. 2d 327, 330 (D.P.R. 2009).

B.  Bail Reform Act

The Bail Reform Act provides for the pretrial detainment of persons after a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The government must establish risk of flight by a preponderance of the evidence [(i.e., that it is more likely than not)]; and/or dangerousness by clear and convincing evidence." United States v. Vázquez-Cintrón, No. 19-CR-685-PAD, 2020 WL 1310540, at *1 (D.P.R. Mar. 17, 2020) (first *citing* United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); then *citing* United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991)); *see also* United States v. Bula-Cartagena, No 24-CR-124-2-RAM, 2024 WL 2091542, at *5 (D.P.R. May 9, 2024). Clear and convincing evidence as to dangerousness is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Isaac-Sanchez, No. 24-CR-124-1-RAM, 2024 WL 4223715, at *5 (D.P.R. Sep. 12, 2024) (*citing* United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984), *aff'd*, United States v. Acevedo-Ramos, 755 F.2d 203 (1st Cir. 1985)).

To determine if the government has met its burden, the district court must consider the following factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." Tortora, 922 F.2d at 884; *see also* 18 U.S.C. § 3142(g). Danger is not limited to the risk of physical violence. Id.

### III. DISCUSSION

Foremost, the Bail Reform Act applies to all persons charged with a federal crime, regardless of immigration status. *See, e.g.*, United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015); United States v. Solis, 453 F. Supp. 3d 1161, 1165 (S.D. Iowa 2020).

The statutory presumption in favor of detention does not apply in this case for two reasons. First, "although Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable [non-citizens] on that list." United States v. Juarez-Vasquez, No. 25-CR-143-WJM-1, 2025 WL 1424280, at *3 (D. Colo. May 16, 2025) (*quoting* United States v. Ailon-Ailon, 875 F.3d 1334, 1338 (10th Cir. 2017)). Second, the offenses charged are not listed in Sections 3142(e)(2) or (3) of the Bail Reform Act. *See* 18 U.S.C. § 3142(e)(2)-(3).

Notwithstanding, the Bail Reform Act does allow a court to impose "pretrial detention in cases that involve a felony that involves the possession or use of a firearm or any other dangerous weapon." Bula-Cartagena, 2024 WL 2091542, at *5 (first citing United States v. Berríos-Aquino, No. 22-CR-473-DRD, 2022 WL 17075919, at *2 (D.P.R. Nov. 18, 2022); then citing 18 U.S.C. § 3142(f)(1)(E)).

Accordingly, the Court analyzes the Section 3142(f) factors in turn.

A.  The Nature and Circumstances of the Offense Charged

Turning first to the nature and circumstances of the offenses charged, in this case Mr. Berroa faces a three-count *Indictment*. (Docket No. 8). Count One charges a violation of 18 U.S.C. § 922(g)(1) for possessing firearms and ammunition, including: one Glock 26 pistol, 9mm, serial number BEDL948; one AM-15 Multicaliber rifle, serial number 16123957; and rounds of 9mm and .223 caliber ammunition. (Id. at 1). Count Two charges violation of 18 U.S.C. § 922(g)(5), since Mr. Berroa, knowing that as a non-citizen, he was illegally and unlawfully in the United States, possessed the firearms and ammunitions previously described. (Id. at 2). Count Three charges that on or about October 16, 2025, Mr. Berroa, who is a non-citizen, "was found in the United States after having been removed subsequent to a conviction for an aggravated felony

and not having obtained the express consent of the Secretary of Homeland Security to reapply for admission to the United States, all in violation of 8 U.S.C. § 1326(a) and (b)(2)."

If convicted, Mr. Berroa faces a statutory maximum of 10 years as to the firearm offense, but there is no mandatory statutory minimum. Since he has two previous federal convictions, his guideline range is likely to be higher than that of a first-time offender. In addition, due to his immigration status it is nearly inevitable that he will be removed, after serving any term of imprisonment. Notably, however, the fact that he is a removable non-citizen does not make him ineligible for bail. *See* United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018).

The standard to establish a risk of flight is a preponderance of the evidence which is a lower than that required to establish dangerousness. Thus, the nature of the offenses - together with Mr. Berroa's criminal history - tilts the scales towards establishing that a risk exists that Mr. Berroa will not return to Court to see these charges through.

B.  The Weight of the Evidence Against Defendant

"This factor goes to the weight of the evidence of [risk of nonappearance and] dangerousness, not the weight of the evidence of the defendant's guilt." United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010). The Government proffered evidence in support

of the charges against Mr. Berroa, and Mr. Berroa does not dispute that the evidence appears strong. However, this factor is not given much weight since, at this stage, the Court's primary concern is not Mr. Berroa's guilt or innocence. *See* United States v. Ramos-Domínguez, 698 F. Supp. 3d 224, 229 (D.P.R. 2023). On the contrary, in accordance with Congress' legislative intent and contemporary case law, greater weight ought to be afforded whether Mr. Berroa poses a danger to the community or represents a risk of flight. *See supra* Section II. As to this, the Government has presented no evidence that Mr. Berroa has failed to appear for court proceedings in the past, nor has the Government presented evidence that Mr. Berroa has the financial means to finance a flight, even if he wanted to. *See* (Docket No. 21). To the contrary, the Court has evidence that suggests that if the Court released him on conditions, he would comply. *See* (Docket No. 18).

Hence, this factor weighs against detention.

C. <u>Mr. Berroa's Personal History and Characteristics</u>

Third, as to Mr. Berroa's history and characteristics, according to the PSR filed by the U.S. Probation Office, Mr. Berroa is a Dominican national and a non-citizen with no legal status in the United States. (Docket No. 11 at 2). Mr. Berroa entered the United States on or about the year 2000 and obtained a work permit. (<u>Id.</u>). The defendant became a lawful permanent resident on

September 22, 2004, and remained residing in Puerto Rico, although frequent travels to the Dominican Republic were reported. (Id.). Mr. Berroa has one prior entry without inspection by the name of Juan Mercedes. (Id.). As a result, he was adjudicated before an Immigration Judge and was granted voluntary departure on July 6, 2000, and departed July 12, 2000. (Id.). Furthermore, according to the record of the U.S. Probation Office, Mr. Berroa was removed from the United States on July 24, 2012 and January 4, 2019, after serving the imprisonment component of his federal sentences. (Id.).

Mr. Berroa has strong ties in Puerto Rico. Namely, Mr. Berroa is a forty-six-year-old, working father who has a family of five U.S. citizen children. (Docket 18 at 6). "His seventeen-year-old daughter lives in Puerto Rico and although he is separated from her mother, they maintain a good co-parenting relationship." (Id.). Mr. Berroa also shares a seventeen-month-old son with his long-term partner of four years, Ms. Espinosa, who is a U.S. citizen and owns a home and business in Florida, but lives in Puerto Rico with Mr. Berroa. (Id. at 7). As to this, Ms. Espinosa provided documentary evidence confirming that, since November 29, 2022, she and Mr. Berroa have resided at the same address of record - a property that they jointly rent for $650.00 a month. (Docket No. 25 at 1-2). Prior to his arrest, Mr. Berroa was working in

construction, but since he lacks legal status to be in the United States, he cannot work legally while on pretrial release. (Docket No. 18 at 2).

By all accounts, Mr. Berroa is a beloved father and integral member of his extended family. The well-being of his children and partner is the key incentive for complying with conditions. While Mr. Berroa has a prior criminal history, the record shows that certain prior matters are remote —originating in 2006 and 2007 — and did not result in convictions, as the charges were dismissed, and the defendant was acquitted. (Docket No. 11 at 3). Further, the other convictions on record date from 2009 and 2017, and were not violent in nature: the charges were to wit, attempting to possess with intent to distribute cocaine and re-entry of removed non-citizen. (Id. at 4).

Moreover, it bears repeating that again, a defendant's immigration status is not a factor that Congress dictated should play into the detention decision under the Bail Reform Act. *See* United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015); United States v. Motamedi, 767 F.3d 1403, 1408 (9th Cir. 1985) (holding that, under the circumstances of the case, the factor of alienage "does not tip the balance either for or against detention").

Thus, the Court believes Mr. Berroa's immigration status and criminal history do not create a risk that he will return to the Dominican Republic rather than face the charges in this case. In assessing this risk, his long-time residential history and his employment at the time of his arrest suggest that Mr. Berroa does not want to return to the Dominican Republic and does want to remain with his partner and children. The Court finds the likelihood very small that Mr. Berroa would voluntarily leave his five children to live somewhere else without them under the current circumstances.

Furthermore, Mr. Berroa has demonstrated a willingness to appear in Court and appeared at bail proceedings accompanied by family members, including Ms. Espinosa, his brother-in-law, and his cousin. In addition, Ms. Espinosa's uncle, Mr. Pérez, has expressed his willingness to serve as a third-party custodian and to house Mr. Berroa. (Docket No. 30 at 2-3).

Thus, the community ties favor Mr. Berroa and weigh in favor of release.

D.  The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Berroa's Release

The Government is not more successful in its efforts to demonstrate through clear and convincing evidence that Mr. Berroa is a danger to the community. The evidence proffered — that Mr. Berroa allegedly possessed firearms, at least one of which was

unloaded, and ammunition under his bed (Docket No. 21 at 2) — is far from showing that Mr. Berroa is such a danger to others or the community that he cannot be released with conditions. As stated, the Government's general statements about the charges brought against Mr. Berroa, and the evidence it has in support of those crimes, do not prove Mr. Berroa's dangerousness – particularly considering the non-violent nature of the charged offenses. Thus, the Government fails to show by a preponderance of the evidence — let alone clear and convincing evidence — that Mr. Berroa is a danger to others or the community that such concerns cannot be mitigated by conditions of release. Given that the Government cannot meet this high bar, this factor weighs against detention. *See* Isaac-Sanchez, 2024 WL 4223715, at *5.

While Mr. Berroa is accused of a serious offense, the Court nevertheless finds that he is not a danger to the community and that there are conditions of release that can reasonably assure the safety of the community and the defendant's appearance as required in this case. These conditions include, but are not limited to, submitting to home detention with electronic monitoring, posting a $10,000 unsecured bond, and submitting to supervision by an approved third-party custodian. Mr. Berroa's partner, Ms. Espinosa, as well as her uncle Mr. Pérez, have offered to serve as his third-party custodian. Mr. Pérez was interviewed

by the Probation Office and was found to be a viable third-party custodian, as he owns a three-bedroom house in Salinas, Puerto Rico, possesses no firearms, has no prior arrest and convictions, and no history of substance abuse or mental health history. *See* (Docket No. 30). Mr. Pérez reported that he was willing to house Mr. Berroa. (Id.).

### IV. CONCLUSION

Upon considering the proffers, the PSR, Magistrate Judge Morgan's *Order of Detention Pending Trial*, and the overall record, the Court finds that the Government has not proved by the preponderance of the evidence that Mr. Berroa represents a flight risk, nor that clear and convincing evidence shows that there is no condition or combination of conditions that will reasonably assure the safety of the community.

Given the foregoing, the Court finds that the factors set forth in Section 3142(g) of the Bail Reform Act and in Tortora, 922 F.2d at 884, establish that a combination of conditions can be fashioned to reasonably assure the appearance of the defendant and the safety of the community. Therefore, Mr. Berroa's *De Novo Motion* is **GRANTED**.

Accordingly, the Court orders Mr. Berroa's immediate release subject to the following conditions:

1. Defendant must not violate federal, state, or local law while on release.

2. Defendant must appear in Court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

3. Defendant will execute an unsecured bond binding Defendant to pay the United States the sum of ten thousand dollars ($10,000) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

4. Defendant will be placed in the third-party custody of Mr. José Pérez who must agree to (a) supervise the Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he might possess. Defendant shall reside with the third-party custodian in the address recorded by the U.S. Probation Officer.

5. Defendant's release is conditioned upon qualification of the third-party custodian and of his residence, as well as verification by the United States Probation Office of electronic monitoring device capability in the proposed residence.

6. Defendant shall submit to location or electronic monitoring as directed by the U.S. Probation Office or supervising officer and comply with all the program requirements and instructions provided.

7. Home detention with electronic monitoring: Defendant shall be at all times restricted to the third-party custodian's residence except for religious services; medical or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the U.S. Probation Officer.

8. Defendant shall submit to supervision by and report for supervision to the U.S. Probation Office.

9.    Defendant shall not leave the jurisdiction of this District.

10.   Defendant shall refrain from possessing firearms, destructive devices, or other dangerous weapons.

11.   Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

12.   Defendant shall not enter any airport or pier.

The Court directs counsel for the Government and for the defendant, the U.S. Marshal Service, and the Probation Office, to use and coordinate their best efforts to effect the immediate release of Mr. Berroa. Mr. Berroa is warned that failure to comply with the conditions of release in this case will trigger revocation proceedings and, potentially, result in a return to pretrial detention.

IT IS SO ORDERED.

In San Juan, Puerto Rico, December 17, 2025.

                                            s/Gina R. Méndez-Miró
                                            GINA R. MÉNDEZ-MIRÓ
                                            UNITED STATES DISTRICT JUDGE